UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

NCTBP CALABRESE LLC, AMERICAN PARK PLACE, INC., and DOUGLAS CALABRESE,
Plaintiffs,

25-CV-6616 (MAV)

-vs-

DECISION & ORDER

VILLAGE OF FAIRPORT, MARK LENZI, and BRYAN WHITE,
Defendants.

## INTRODUCTION

On October 21, 2025, Plaintiffs NCTBP Calabrese LLC (NCTBP), American Park Place, Inc., and Douglas Calabrese filed a complaint against Defendants Village of Fairport, Mark Lenzi, and Bryan White in state court. ECF No. 1-3 at 8–14. On the same day, Plaintiffs filed an order to show cause for a temporary restraining order (TRO) and preliminary injunction. ECF No. 1-3 at 5–7, 15–26. Defendants removed the case to this Court on October 28, 2025. ECF No. 1.

Defendants filed a memorandum in opposition to the motion for a TRO, ECF No. 4, and Plaintiffs filed a reply in support of the TRO, ECF No. 5. Thereafter, Plaintiffs advised the Court of post-briefing developments and requested additional relief. ECF No. 7. Defendants responded in opposition. ECF No. 10. Plaintiffs filed further supplemental briefing regarding additional new developments, ECF No. 11, and Defendants responded, ECF No. 14.

The motion for TRO and a preliminary injunction is fully briefed. For the following reasons, the Court denies the motion.

## BACKGROUND

NCTBP owns commercial properties in Fairport, New York, including 80 North Main Street, 111 Parce Avenue, 10 Liftbridge Lane, and 54 North Main Street. ECF No. 1-3 at 8, 12. American Park Place, Inc. is "involved in the ownership, leasing, and management" of those commercial properties. ECF No. 1-3 at 8. Douglas Calabrese is the President of NCTBP and the CEO of Park Place. ECF No. 1-3 at 9.

Defendants include the Village of Fairport, where the commercial properties are located, Mark Lenzi, who is the Code Enforcement Officer for the Village, and Bryan White, who is the Village Manager. ECF No. 1-3 at 9.

Plaintiffs initiated this action by summons and complaint filed on October 21, 2025 in Monroe County Supreme Court. ECF No. 1-3 at 8–14. Plaintiffs alleged that "Defendants have subjected Plaintiffs to a pattern of selective enforcement, retaliation, and harassment since approximately 2019." ECF No. 1-3 at 9. They contended that in July 2025, Defendants sought a "routine fire/safety inspection" of Plaintiffs' property at 111 Parce Avenue. ECF No. 1-3 at 9. Plaintiffs requested a "neutral inspector" of their choosing and Defendants refused. ECF No. 1-3 at 10. Defendants obtained an administrative search warrant on October 7, 2025 to search 111 Parce Avenue. ECF No. 1-3 at 10; *see also* ECF No. 1-3 at 297–299 (warrant).

In the complaint, Plaintiffs alleged that the administrative search warrant violated the Fourth Amendment and sought a declaratory judgment. ECF No. 1-3 at 10–11. They further alleged selective enforcement and retaliation in violation of the Equal Protection Clause of the Fourteenth Amendment and New York Constitution.

ECF No. 1-3 at 11–12. Plaintiffs contended that Defendants obtained the search warrant in retaliation for Plaintiffs' request for a neutral inspector. ECF No. 1-3 at 11. Plaintiffs further alleged that on September 9, 2025, Defendants improperly sent them a cease-and-desist notice for work they were doing on the roof of 111 Parce Avenue. ECF No. 1-3 at 12. Plaintiffs claimed that Defendants blocked access to their property at 10 Liftbridge Lane, "dramatically reducing the property's functional use and value." ECF No. 1-3 at 12. Plaintiffs also alleged that Defendants planned to eliminate access to their property at 54 North Main Street, but did not implement the plan. ECF No. 1-3 at 12. Finally, Plaintiffs alleged that Defendants improperly condemned the property located at 80 North Main Street, which deterred tenants and led to litigation between Plaintiffs and prospective tenant Three Buds LLC. ECF No. 1-3 at 12.

Finally, Plaintiffs sought a preliminary and permanent injunction as requested relief in the complaint. ECF No. 1-3 at 13. In the prayer for relief, Plaintiffs sought only injunctive and declaratory relief (and related costs) related to 111 Parce Avenue. ECF No. 1-3 at 14. Plaintiffs did not seek monetary damages.

On the same day, Plaintiffs filed an order to show cause for a TRO and a preliminary injunction. ECF No. 1-3 at 5–7. They requested relief including enjoining the administrative search warrant, quashing it as unconstitutional, and "[e]njoining Defendants from issuing or enforcing any stop-work orders, making tenant contacts, or otherwise interfering with Plaintiffs' use, occupancy, or leasing of their commercial properties." ECF No. 1-3 at 5–6. The requested relief mirrored the prayer for relief in

the complaint. *Compare* ECF No. 1-3 at 5–6 *with* ECF No. 1-3 at 14.

On October 28, 2025, Defendants removed the case to this Court, asserting that it involved federal questions. ECF No. 1 at 3.

Once the matter was removed, Defendants filed a response in opposition to the "motion for injunctive relief." ECF No. 4. They agued that judicial abstention is required under *Younger v. Harris*, 401 U.S. 37 (1971). ECF No. 4 at 8–14. Defendants further argued that Plaintiffs could not challenge the search warrant prior to its execution, ECF No. 4 at 14–15, and that Plaintiffs did not satisfy the elements for injunctive relief, ECF No. 4 at 17–31.

In reply, Plaintiffs said that the search had occurred and Defendants "uncover[ed] a laundry list of alleged violations—many trivial, some disputed, and all conveniently marshaled to justify the very retaliation Plaintiffs predicted." ECF No. 5 at 1. Plaintiffs argued that *Younger* does not apply, ECF No. 5 at 2–5, and that they had demonstrated the elements for a TRO, ECF No. 5 at 5–11.

On December 6, 2025, Plaintiffs notified the Court of "post-briefing developments," including that Defendants issued them over 200 code violations and directly contacted Plaintiffs' tenants. ECF No. 7 at 1. Plaintiffs alleged that Defendants were interfering with their business relations and contended that injunctive relief was still necessary to "halt Defendants' retaliatory campaign." ECF No. 7 at 2–3. Plaintiffs requested additional relief including enjoining further inspections pursuant to the search warrant, enjoining communications with Plaintiffs' tenants, and enjoining the issuance of "any further notices of violation,

stop-work orders, or enforcement actions against Plaintiffs' properties pending resolution of this action." ECF No. 7 at 3.

Defendants responded on December 17, 2025, and asserted that the warrant had been executed in four phases, and that they had issued Plaintiffs over 200 violations. ECF No. 10 at 2–4. Defendants said that they contacted Plaintiffs to "collaborate on a plan of action to address the numerous violations." ECF No. 10 at 4. They claimed to have included the tenants in the email because some of the violations would require closure if not addressed. ECF No. 10 at 5. Defendants said that the tenants "were the individuals who would most likely be placed at risk as a result of the safety violations, [so] it was appropriate to include them." ECF No. 10 at 5. Defendants further said that Plaintiffs had not responded to their multiple requests to meet, and they were contemplating filing enforcement proceedings in state court. ECF No. 10 at 6–7. In an attorney declaration, Defendants contended that the Village Code permitted their contact with tenants. ECF No. 10-10 at 3.

On March 19, 2026, Plaintiffs filed a supplemental brief updating the Court that they met with Defendants on January 28, 2026 to discuss remedying the property. ECF No. 11 at 1. Defendants then filed a complaint against Plaintiffs on February 17, 2026 in Monroe County Supreme Court seeking $4.4 million for alleged violations (Index No. E2026003927). ECF No. 11 at 1–2. The Rochester Business Journal published an article regarding the lawsuit, which Plaintiffs alleged harmed their business—their bank questioned their ability to pay back loans and their tenants expressed alarm. ECF No. 11 at 2. Plaintiffs said that when they attempted

to lease space at 111 Parce Avenue to a tenant, Defendants would not allow them until all of the violations were corrected. ECF No. 11 at 2. Plaintiffs contended that they had corrected 85% of the violations. ECF No. 11 at 2.

Plaintiffs sought the additional relief of enjoining the state enforcement action. ECF No. 11-2 at 11–12. Plaintiffs also sought additional relief in the form of enjoining Defendants from "[r]efusing to process permit applications or discuss proposed uses for Plaintiffs' properties on the basis of the pending litigation or the cited code violations," and from talking to the media about the enforcement actions. ECF No. 11-2 at 12.

Finally, Defendants responded to Plaintiffs' update on April 3, 2026. ECF No. 14. Defendants repeated their prior arguments and argued that enjoining the state court enforcement action would violate *Younger*. ECF No. 14-5 at 5. They contended that "the relief sought in Plaintiffs' Motion is overwhelmingly moot." ECF No. 14-5 at 5. Defendants contended that the motion should be denied because Defendants have never been served with the summons and complaint. ECF No. 14-5 at 5–6 (citing *King v. Vill. of Geneseo*, 773 F. Supp. 3d 1, 7 (W.D.N.Y. 2025)). Finally, Defendants argued that the relief requested in the motion is either moot or "wholly unwarranted (because [Plaintiffs'] submissions concede the existence of violations the Village has a statutory duty to address)." ECF No. 14-5 at 7.

## LEGAL STANDARD

"'[T]he purpose of a temporary restraining order is to preserve an existing situation in status quo until the court has an opportunity to pass upon the merits of

the demand for a preliminary injunction.'" *Martin v. Warren*, 482 F. Supp. 3d 51, 67 (W.D.N.Y. 2020) (quoting *Garcia v. Yonkers Sch. Dist.*, 561 F.3d 97, 107 (2d Cir. 2009)).

"The criteria for granting a TRO pursuant to Fed. R. Civ. P. 65(b) ('Rule 65(b)') or a preliminary injunction pursuant to Fed. R. Civ. P. 65(a) ('Rule 65(a)') are the same." *Kramer v. Pawlak*, No. 12-CV-813A(F), 2012 WL 4473256, at *3 (W.D.N.Y. Sept. 26, 2012), *report and recommendation adopted*, No. 12-CV-813A, 2012 WL 5943341 (W.D.N.Y. Nov. 27, 2012). Specifically, a party seeking a TRO or preliminary injunction must demonstrate: (1) a likelihood of irreparable injury in the absence of an injunction; (2) a likelihood of success on the merits or sufficiently serious questions going to the merits to make them fair ground for litigation; (3) that the balance of hardships tips in the movant's favor or, if relying on the presence of sufficiently serious questions, that the balance of hardships tips decidedly in the plaintiff's favor; and (4) that the public interest would not be disserved by the issuance of an injunction. *See Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 895 (2d Cir. 2015).

"Temporary restraining orders and preliminary injunctions are extraordinary and drastic remedies, which are never awarded as of right, or as a routine matter." *Rush v. Hillside Buffalo, LLC*, 314 F. Supp. 3d 477, 483–84 (W.D.N.Y. 2018) (internal quotation marks and citations omitted). Thus, the Supreme Court has stated they "should not be granted unless the movant, by a clear showing, carries the burden of

persuasion." *Sussman v. Crawford*, 488 F.3d 136, 139–40 (2d Cir. 2007) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)).

## DISCUSSION

Plaintiff sought a TRO and preliminary injunction enjoining Defendants from executing the administrative search warrant at 111 Parce Avenue, quashing the search warrant, and "[e]njoining Defendants from issuing or enforcing any stop-work orders, making tenant contacts, or otherwise interfering with Plaintiffs' use, occupancy, or leasing of their commercial properties." ECF No. 1-3 at 5–6.

In supplemental briefing, Plaintiffs requested additional relief including enjoining further inspections pursuant to the search warrant, enjoining communications with Plaintiffs' tenants, and enjoining the issuance of "any further notices of violation, stop-work orders, or enforcement actions against Plaintiffs' properties pending resolution of this action." ECF No. 7 at 3.

In the third round of briefing, Plaintiffs sought the additional relief of enjoining the state enforcement action and enjoining Defendants from "[r]efusing to process permit applications or discuss proposed uses for Plaintiffs' properties on the basis of the pending litigation or the cited code violations," and from talking to the media about the enforcement actions. ECF No. 11-2 at 11–12.

For the reasons that follow, Plaintiffs' motion is denied.

### I. *Younger* abstention.

Defendants argued that the Court should abstain under *Younger*. ECF No. 4 at 8–14. Plaintiff responded that *Younger* abstention does not apply. ECF No. 5 at 2–

5. The Court agrees with Defendants.

"*Younger* generally requires federal courts to abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings." *Diamond "D" Const. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002). The doctrine has been extended to civil actions. *See Kaufman v. Kaye*, 466 F.3d 83, 86–87 (2d Cir. 2006).

"*Younger* abstention seeks to avoid federal court interference with ongoing state criminal prosecutions, state-initiated civil enforcement proceedings, and state civil proceedings that involve the ability of state courts to perform their judicial functions." *DeRaffele v. Unified Ct. Sys. of New York*, No. 24-CV-1920 (CS), 2024 WL 1329355, at *4 (S.D.N.Y. Mar. 26, 2024) (citing *Jones v. Cnty. of Westchester*, 678 Fed. App'x 48, 49–50 (2d Cir. 2017)). Thus, abstention is appropriate in only three categories of state court proceedings: (1) state criminal prosecutions; (2) civil enforcement proceedings that are "akin to criminal prosecutions"; and (3) civil proceedings "that implicate a State's interest in enforcing the orders and judgments of its courts." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72–73 (2013).

"*Younger* abstention is required when three conditions are met: (1) there is an ongoing state proceeding; (2) an important state interest is implicated in that proceeding; and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of the federal constitutional claims." *Diamond "D" Const.*, 282 F.3d at 198; *see also Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982) (providing these requirements).

Here, the Court finds that Defendants' enforcement action constitutes civil enforcement proceedings that are "akin to criminal prosecutions." *Sprint*, 571 U.S. at 72; *see, e.g.*, *Chestnut Hill NY, Inc. v. City of Kingston, NY*, No. 1:25-CV-00368 (BKS/DJS), 2026 WL 764641, at *13 (N.D.N.Y. Mar. 18, 2026); *Jagoda v. City of Saratoga Springs*, 819 F. Supp. 3d 116, 123 (N.D.N.Y. 2025) (finding that "[r]egardless of whether" the local enforcement action the city filed against the plaintiff in city court in connection with the plaintiff's alleged violations of city code, "is criminal prosecution or a civil enforcement proceeding," it fell "squarely within the class of proceedings to which *Younger* applies").

The three *Younger* requirements are also met. The state court enforcement action is ongoing. Defendants began the enforcement action by securing an administrative search warrant from the Perinton Town Court on October 7, 2025. *See* ECF No. 1-3 at 297–299. Defendants then executed the warrant in October and November 2025 and issued Plaintiffs notice of over 200 code violations. *See* ECF No. 10 at 3–4. Defendants then filed an enforcement action in Monroe County Supreme Court, Index No. E2026003927, on February 17, 2026. The Court takes judicial notice of that complaint and docket. *See Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) ("[C]ourts routinely take judicial notice of documents filed in other courts, . . . not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.").

That the enforcement action was not formally filed until February 2026 does not change the applicability of *Younger* under the circumstances. *See Hicks v.*

*Miranda*, 422 U.S. 332, 348–49 (1975) ("[W]here state criminal proceedings are begun against the federal plaintiffs after the federal complaint is filed but before any proceedings of substance on the merits have taken place in the federal court, the principles of *Younger v. Harris* should apply in full force."). As discussed, the local enforcement action constitutes civil enforcement proceedings that are "akin to criminal prosecutions," *Sprint*, 571 U.S. at 72, regardless of whether they are characterized as criminal or civil in nature. *See Jagoda*, 819 F. Supp. 3d at 123.

Turning to the second *Younger* requirement, the State of New York has an interest in ensuring compliance with local fire codes and in deciding its own enforcement actions. *See Chestnut Hill*, 2026 WL 764641 at *14 ("'[c]ourts in this circuit routinely recognize' the state interest in regulating zoning and land use as 'an important state interest.'") (quoting *Jagoda*, 819 F. Supp. 3d at 124); *Homere v. Inc. Vill. of Hempstead*, 322 F. Supp. 3d 353, 367–68 (E.D.N.Y. 2018) ("It has long been held that issues involving public welfare and safety fall squarely within a state's plenary police powers and therefore implicate important state interests."); *Wandyful Stadium, Inc. v. Town of Hempstead*, 959 F. Supp. 585, 590 (E.D.N.Y. 1997). "As a local building code is a policy manifestation of that uniquely local interest in public health, wellness, safety, and comfort, the Court concludes that any enforcement proceedings against Plaintiffs initiated for violations of the Village building code satisfy *Younger's* second requirement." *Homere*, 322 F. Supp. 3d at 368.

Under the third *Younger* requirement, Plaintiffs here have an adequate opportunity to raise their constitutional challenges in the state court proceeding.

Indeed, Plaintiffs have done so. They raised affirmative defenses in the enforcement proceeding alleging that the search was unconstitutional, and raised counterclaims alleging that the warrant was obtained in retaliation for exercising their First Amendment rights of requesting a neutral inspector and filing a lawsuit. *See* Index No. E2026003927, NYSCEF Doc. No. 7 (answer with counterclaims).

Plaintiffs argue that they have no adequate state forum because suppression is only available in criminal prosecutions and they sought to stop the search rather than to "suppress its fruits," and that a state court could not "provide prospective injunctive relief preventing future retaliatory enforcement." ECF No. 5 at 3–4. Plaintiffs could have sought this same relief in state court. Indeed, they initially sought their TRO in state court. *See* ECF No. 1-3 at 5–7; *see also* CPLR 6301 ("Grounds for preliminary injunction and temporary restraining order").

Further, Plaintiffs have not established an exception to *Younger*. "[E]ven if *Younger's* prerequisites are satisfied, a federal court may exercise jurisdiction if the plaintiff can make a showing of 'bad faith, harassment or any other unusual circumstance that would call for equitable relief.'" *Lowell v. Vermont Dep't of Child. & Fams.*, 835 F. App'x 637, 639 (2d Cir. 2020) (quoting *Falco v. Justices of the Matrimonial Parts of Sup. Ct. of Suffolk Cnty.*, 805 F.3d 425, 427 (2d Cir. 2015)). To demonstrate bad faith, a plaintiff must show that the relevant state proceeding "was initiated with and is animated by a retaliatory, harassing, or other illegitimate motive." *Diamond "D" Const.*, 282 F.3d at 199. Moreover, for a showing of bad faith, "the party bringing the state action must have no reasonable expectation of obtaining

a favorable outcome." *Cullen v. Fliegner*, 18 F.3d 96, 103 (2d Cir. 1994).

Plaintiffs argued that the bad faith exception "requires federal intervention" because Defendants obtained the warrant right after Plaintiffs requested a neutral inspector. ECF No. 5 at 4–5. Defendants contended that they sought the warrant in good faith, "for the purposes of administering the requirements of the Uniform Code." ECF No. 4 at 11–12, 14.

Plaintiffs have not established that the bad faith exception applies. The warrant was sought "[i]n accordance with the Village's general inspection program to perform fire safety and property maintenance inspections as required under the Uniform Code and Village Code." ECF No. 4-2 at 5. Defendants therefore had a legitimate purpose for initiating the enforcement action against Plaintiffs, and for pursuing it when they found violations. *See, e.g.*, *Miller v. Sutton*, 697 F. App'x 27, 28 (2d Cir. 2017) ("The bad faith exception does not apply because the defendants had legitimate purposes for pursuing the disciplinary proceedings against her.").

Importantly, the state court has also ruled on a question related to the alleged bad faith. Plaintiffs raised the same allegations underlying their claim of bad faith in the state court proceeding through affirmative defenses of unclean hands and counterclaims of retaliation and abuse of process. *See* Index No. E2026003927, NYSCEF Doc. No. 7 (answer with counterclaims). The Court dismissed the counterclaims on a motion to dismiss. *See* Index No. E2026003927, NYSCEF Doc. No. 44. Plaintiffs have appealed that ruling to the Fourth Department. Doc. No. 47. This Court will not retain jurisdiction on the basis of bad faith allegations already rejected

by a state court.

In sum, the Court abstains from ruling on Plaintiffs' motion for a TRO and preliminary injunction due to the ongoing state court enforcement proceedings.

**II. Even if *Younger* did not require abstention, Plaintiffs are not entitled to injunctive relief.**

Even if *Younger* abstention did not apply, the Court would still deny Plaintiffs' motion for a TRO and a preliminary injunction.

Plaintiffs initially sought a TRO and preliminary injunction enjoining Defendants from executing the administrative search warrant at 111 Parce Avenue and quashing the search warrant. ECF No. 1-3 at 5–6. The administrative search warrant was executed in October and November 2025. *See* ECF No. 10 at 3–4. As such, the requested initial relief is moot.

Aside from the relief requested relating to the search warrant, Plaintiffs sought more general relief of "[e]njoining Defendants from issuing or enforcing any stop-work orders, making tenant contacts, or otherwise interfering with Plaintiffs' use, occupancy, or leasing of their commercial properties." ECF No. 1-3 at 5–6. Plaintiffs further requested enjoining the issuance of "any further notices of violation, stop-work orders, or enforcement actions against Plaintiffs' properties pending resolution of this action," ECF No. 7 at 3, and the enjoining of Defendants from "[r]efusing to process permit applications or discuss proposed uses for Plaintiffs' properties on the basis of the pending litigation or the cited code violations," and from talking to the media about the enforcement actions. ECF No. 11-2 at 11–12.

Plaintiffs are not entitled to this injunctive relief because they have not

demonstrated a likelihood of success on the underlying merits. Moreover, Plaintiffs have not shown a likelihood of irreparable injury in the absence of an injunction. For this prong, "[a] moving party must show that the injury it will suffer is likely and imminent, not remote or speculative." *N.A.A.C.P., Inc. v. Town of E. Haven*, 70 F.3d 219, 224 (2d Cir. 1995). The possibility of future violations, enforcement actions, permit applications, or media inquiries is too speculative to warrant injunctive relief.

Plaintiffs are not entitled to a TRO or preliminary injunction at this time.

**III. Plaintiffs are granted leave to amend the complaint.**

*Younger* applies to claims for injunctive and declaratory relief, but not to damages claims. *See Morpurgo v. Inc. Vill. of Sag Harbor*, 327 F. App'x 284, 285–86 (2d Cir. 2009) (summary order); *Kirschner v. Klemons*, 225 F.3d 227, 235 (2d Cir. 2000) ("The *Younger* doctrine is as applicable to suits for declaratory relief as it is to those for injunctive relief."). Here, Plaintiffs sought only injunctive and declaratory relief (and related costs) in their complaint. *See* ECF No. 1-3 at 14.

Because the Court abstains from ruling on the motion for a TRO and a preliminary injunction under *Younger*, and the relief requested in the motion mirrors the relief requested in the complaint, *compare* ECF No. 1-3 at 5–6 *with* ECF No. 1-3 at 14, the Court could abstain entirely and dismiss the case. *See Kirschner*, 225 F.3d at 235–37 (affirming dismissal of claims under *Younger*); *see also Mohammed v. Paige*, No. 17-CV-5520 (JPO), 2018 WL 2371724, at *2 (S.D.N.Y. May 23, 2018) ("Although not all Defendants move to dismiss, the Court may invoke *Younger* abstention *sua sponte*.").

However, the complaint was initially filed in state court. If Plaintiffs wish to proceed in federal court on claims that are not currently being litigated in state court, they are granted leave to amend the complaint without separately moving to do so. *See* Fed. R. Civ. P. 15(a)(2).

## CONCLUSION

Upon careful consideration of the motion and responses thereto, the Court denies Plaintiffs' motion for a TRO and a preliminary injunction. The Court abstains under *Younger* from consideration of issues currently being litigated in state court. In any event, Plaintiffs' requested relief regarding the search warrant executed last year is moot. Plaintiffs' requests for further injunctive relief regarding Defendants' alleged retaliation campaign against them are denied based on a lack of likelihood of success on the merits and a lack of likelihood of irreparable injury.

Therefore, for the foregoing reasons, it is hereby

ORDERED, that Plaintiffs' motion for a TRO and a preliminary injunction, ECF No. 1-3 at 5–7, 15–26, is DENIED; and it is further

ORDERED that Plaintiffs may file an amended complaint on or before December 4, 2026.

SO ORDERED.

Dated: October 26, 2026
Rochester, New York

HON. MEREDITH A. VACCA
United States District Judge